IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA REGAOLO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAVE-A-LOT and MORAN FOODS, LLC | : | NO. 13-5786 |

**MEMORANDUM**

ELIZABETH T. HEY, U.S.M.J.                                             August 14, 2014

In this action, Plaintiff Donna Regaolo ("Plaintiff") seeks damages from Moran Foods, LLC ("Moran" or "Defendant") for injuries she allegedly sustained when she slipped on grapes while shopping at a Save-A-Lot supermarket located on Frankford Avenue in Philadelphia, Pennsylvania.[1]  Presently before the court is Moran's motion for summary judgment (Doc. 24) and Plaintiff's response thereto (Doc. 25).  For the reasons that follow, the motion for summary judgment will be granted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Except where stated, the following facts are not in dispute.  On November 7, 2011, at approximately 6:50 p.m., Plaintiff and her husband Tony Bethea entered the Save-A-Lot supermarket located at 8445 Frankford Avenue in Philadelphia, Pennsylvania.  See

---

[1] Moran has represented that it operates Save-A-Lot stores in Philadelphia, Pennsylvania, and is therefore the proper corporate defendant in this case.  See Doc. 4 ¶¶ 2-4; Doc. 24 at 4 (ECF pagination).  Plaintiff does not contest this representation.  By Order dated October 22, 2013, the Honorable Felipe L. Restrepo, to whom this case was formerly assigned, approved the parties' stipulation to amend the original caption to name "Moran Foods, LLC" in place "Supervalue Inc., Individually and d/b/a Save-A-Lot" and "Supervalue Stores, Inc., Individually and d/b/a Save-A-Lot."  See Doc. 7. Although the Stipulation did not explicitly remove "Save-A-Lot" from the caption, it is apparent that Moran is the sole defendant.

Complaint, Doc. 24-1 ("Complaint") ¶ 9; Plaintiff Dep. 05/14/14, Doc. 24-1 ("Plaintiff Dep.") at 13-14.  At her deposition, Plaintiff explained that she took about five or six steps into the right side of the front entrance of the supermarket and "next thing I know I was slipping on some grapes."  Plaintiff Dep. at 16.  She explained that she slipped in an area before she reached the shopping aisles, and that Mr. Bethea was "a few steps away" in an aisle and did not witness Plaintiff's slip.  Id, at 17-18, 24.  Plaintiff slipped, but she did not fall.  Id. at 20.

      Plaintiff further described her slipping accident as follows:

> Q: Do you know what caused your accident?
> A: Grapes.
> Q: How do you know that?
> A: After everything happened I got really stiff.  I stood there for a little while and didn't really know what was going on.  I was confused.  As I was standing there I looked down and I seen grapes on the floor.  And when I looked at them, some of them were smashed like they was rotten, and it looked like somebody done walked through them already.
> Q: Got you.  Did you step on any of those grapes would you say?
> A: It happened – sir, everything happened so fast.  Only thing I know I was walking trying to shop in the Save-A-Lot store and I realized that I just slipped.  When I looked down I saw grapes, red grapes that was on the floor.
> Q: About how many grapes did you see if you're able to say?
> A: I'll say approximately eight to ten grapes.
> Q: Do you know how much area it covered?
> A: I'd say probably four tiles.
> Q: Four tiles?
> A: Yes.
> Q: How big is each tile would you say?
> A: Each tile, I'll say approximately this small.  I'm not sure of the numbers, the size of the tile.   (Indicating.)
> Q: Did you see any empty bags on the ground?
> A: No.

> Q: Did you see any – were all the grapes red?
> A: Yes.
> Q: Do you know if there were any green grapes –
> A: No.
> Q: -- or purple grapes?
> A: No.
> Q: Was there a grape display near where your accident happened?
> A: No.
> Q: Do you know where the grapes are sold at in the store?
> A: No.
> Q: Did you see the grapes before your accident?
> A: No.
> ----
> Q: Are you saying you slipped on the grapes?
> A: Yes.
> Q: Did you fall?
> A: No.
> ----
> Q: Did you see any on your shoes?
> A: I don't remember looking underneath my shoes. I know it was grapes right there and I know they was smashed and they was rotten grapes.
> Q: Were they whole grapes on the ground too?
> A: What do you mean whole grapes?
> Q: Were there any grapes that looked like they were whole and not stepped on?
> A: No.
> Q: Was it wet?
> A: Yes.
> Q: Was it sticky?
> A: I know they was wet.

Plaintiff Dep. at 18-22. Plaintiff did not see any wet floor signs or mats on the ground, and there were no employees near her at the time of her accident. Id. at 22.

Plaintiff further testified about the grapes as follows:

> Q: Do you know how long they were there?
> A: No, but it looked to me that they was rotten, like they was bad grapes.
> Q: What makes you say they were rotten?

3

> A: They was brown looking. They wouldn't look like somebody would eat them.
> Q: Anything else about them other than they were brown looking?
> A: They was wet and they was smashed and looked like somebody walked through them already.
> Q: Okay. But did you see anybody walk through them before you?
> A: No.
> ----
> Q: Do you know where the grapes came from?
> A: No.
> Q: Do you know how long they were there?
> A: I can assume that they was probably there for a while because they was just sitting there. I didn't see them.

Plaintiff Dep. at 23-25.

Save-A-Lot District Manager James McConway was also deposed in this matter. See McConway Dep. 05/14/14, Doc. 24-2 ("McConway Dep."). [2]  Mr. McConway testified that the store where Plaintiff slipped conducted floor sweeps, or an inspection of the store floor, every four hours, and that according to the relevant Sweep Log, the last sweep prior to Plaintiff's accident occurred at 4:30 p.m. See McConway Dep. at 10, 28, 38; Sweep Log at Doc. 24-2 Exh. McConway-4. In addition, Mr. McConway described a

---

[2] Plaintiff argues that Moran improperly relies on Mr. McConway's testimony to support its summary judgment motion, in violation of Nanty-Glo v. American Surety Co., 163 A. 523 (Pa. 1932). See Doc. 25 at 9-10 (ECF pagination). Plaintiff's argument is misplaced. "The Nanty-Glo rule prohibits summary judgment 'where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party . . . .'" Lineberger v. Wyeth, 894 A.2d 141, 149 (Pa. Super. 2002) (citations omitted). Here, Moran relies exclusively on Plaintiff's own deposition testimony as to how the accident occurred, supplemented by Save-A-Lot documents and Mr. McConway's deposition evidencing the store's investigation of Plaintiff's accident and its cleaning and stocking practices.

store policy called "scan-for-six," which "basically teaches [employees] when they walk through the store to keep an eye open and to scan a 6 foot area around you at all times, and if you see any unsafe condition to address that condition." McConway Dep. at 9-10. Mr. McConway testified that he was generally familiar with the store in question and that as one entered the store, on the left-hand side there would be grocery pallets and on the right-hand side there "was a small produce display with some dry produce, not refrigerated-type produce." Id. at 35-36. He explained that the refrigerated produce was located in aisle 1 approximately 40 feet down from where the accident occurred, and that grapes would normally be kept under refrigeration in that location. Id. at 35-36. He also testified that each floor tile was one square foot. Id. at 22.[3]

The record contains additional documents referencing the incident, including an Incident Report and Video Evidence Worksheet completed by the assistant manager on duty which were discussed during Mr. McConway's deposition. See Doc. 24-2 Exh. McConway-1 & -2. The assistant manager was not deposed and did not witness the incident, there is no actual photographic evidence, and no video has been presented. Neither side argues that these documents add any relevant factual information to the discussion.

Plaintiff commenced this lawsuit in August 2013 by filing a civil complaint in the Court of Common Pleas of Philadelphia County, alleging negligence based on premises

---

[3] Plaintiff testified during her deposition that the grapes covered about four tiles, and indicated the size of each tile with her hands, but there is no indication of the size Plaintiff indicated with her hands. See Plaintiff Dep. at 19.

liability.  See Complaint.  On October 2, 2013, Moran removed the lawsuit to the District Court for the Eastern District of Pennsylvania, where jurisdiction is based on diversity of citizenship.  See Doc. 1.[4]  The parties thereafter consented to proceed to magistrate judge jurisdiction.  See Doc. 13.  On June 13, 2014, Moran filed the resent motion for summary judgment, to which Plaintiff filed a response on June 24, 2014.  See Docs. 24, 25.

## II.    SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[5]  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that

---

[4] For reasons that are not entirely clear, Moran removed the identical complaint twice – first on October 2, 2013, which received the present docket number, and again on November 21, 2013, which was docketed at Civil Action Number 13-6783.  On November 25, 2013, Judge Restrepo ordered both actions remanded to the Philadelphia Court of Common Pleas for lack of federal subject-matter jurisdiction.  See Civ. No. 13-5786 at Doc. 10, Civ. No. 13-6783 at Doc. 3.  However, by Order dated December 5, 2013, Judge Restrepo granted Moran's motion for reconsideration and consolidated the two actions under the present docket number, 13-5786.  See Doc. 12.

[5] Anderson predated the 2010 Amendment to Rule 56.  However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard.  Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

the materials cited do not establish the absence or presence of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1)(A), (B). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

## III. DISCUSSION

As previously noted, Plaintiff asserts a negligence claim against Moran based on premises liability. Moran moves for summary judgment on the grounds that no genuine issue of material fact exists as to whether the Save-A-Lot store had notice of a hazardous condition prior to Plaintiff's slipping accident.

Under Pennsylvania law,[6] the elements of negligence are (1) the existence of a duty or obligation recognized by law, (2) a breach of the duty, (3) a causal connection between the breach and the resulting injury, and (4) actual loss or damage. See Krentz v. Consol. Rail Corp., 910 A.2d 20, 27 (Pa. 2006). "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. 1994) (quoting Morena v. South Hills Health Sys., 62 A.2d 680, 684 (Pa. 1983)). In premises-liability actions, the duty of care that a possessor of land owes to someone who enters the land "depends

---

[6] In diversity cases such as this one where the claim rests on state law, the federal court applies the choice of law principles of the forum state. Huber v. Taylor, 469 F.3d 67, 73 (3d Cir. 2006) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). The incident giving rise to the present lawsuit occurred in Pennsylvania and it is undisputed that Pennsylvania courts would apply Pennsylvania law to this action.

upon whether the latter is a trespasser, licensee, or invitee." Gutteridge v. A.P. Green Servs., Inc., 804 A.2d 643, 655 (Pa. Super. 2002) (citation omitted).  Here, there is no dispute that Plaintiff was an invitee in Moran's Save-A-Lot store.

The duty owed by business owners to invitees is well settled.  "[A] business owner owes a duty to an invitee 'to maintain its premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.'" David v. Pueblo Supermarket, 740 F.2d 230, 236 (3d Cir. 1984) (quoting Morris v. Gimbel Bros., Inc., 394 F.2d 143, 145 (3d Cir. 1968)).  "An invitee is entitled to expect that the [business owner] will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein."  Restatement (Second) of Torts § 343 (1965), comment d.  A possessor of land, such as a business owner, is liable for physical harm caused to invitees by a condition on the land "if, and only if, he (a) knows or by the existence of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Gutteridge, 804 A.2d at 656 (citation omitted); Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983) (adopting Restatement (Second) of Torts § 343 (Pa. 1965)).

In the context of a premises liability action involving a slip-and-fall, the threshold requirement for establishing a breach of duty is the business owner's notice of the

hazardous condition.  See Scruggs v. Retail Ventures, Inc., No. 06-1148, 2008 WL 2687147, at *5 (W.D. Pa. July 8, 2008) ("The threshold of establishing a breach of duty is notice.").  "To establish notice, an 'invitee must prove the proprietor of the land had a hand in creating the harmful condition, or . . . had actual or constructive notice of such condition.'"  Cox v. Wal-Mart Stores East, L.P., No. 07-2391, 2008 WL 4072804, at *4 (E.D. Pa. Aug. 26, 2008) (Pratter, J.) (quoting Estate of Swift v. Ne. Hosp., 690 A.2d 719, 722 (Pa. Super. 1997)).  Here, there is no allegation, and no evidence, that Moran had actual notice of the grape hazard.  Therefore, the sole issue is whether the Save-A-Lot store had constructive notice of the grapes on the floor prior to Plaintiff's accident.

In order to establish constructive notice, a plaintiff must prove "that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence."  Cox, 2008 WL 4072804, at *4 (citing Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608 (Pa. 1965)).  "State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff 'to provide some proof as to the length of time a spill existed on the floor to establish constructive notice.'"  Id. (quoting Kujawski v. Wal-Mart Stores, Inc., No. 06-4120, 2007 WL 2791838, at *4 (E.D. Pa. Sept. 25, 2007) (Giles, J.)); see also Cox, 2008 WL 4072804, at *8 ("Courts interpreting Pennsylvania law make clear that absent any evidence of the duration of time the spill remained on the floor prior to the accident, constructive notice cannot be inferred.").  Although what constitutes constructive notice depends on the circumstances of each case, "one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous

condition and the accident." See Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. 2001).

Given these principles, courts applying Pennsylvania law have consistently granted summary judgment to defendants where plaintiffs present insufficient evidence regarding the duration of time a spill or other hazard remained on the floor prior to an accident.  See, e.g., Henderson v. J.C. Penney Corp, Inc., No. 08-0177, 2009 WL 426180, at *4 (E.D. Pa. Feb. 20, 2009) (Jones, J.) (granting summary judgment to defendant where plaintiff "presented no evidence of how long the [clothing] tag was on the floor" prior to plaintiff's slip and fall); Craig v. Franklin Mills Assocs., 555 F. Supp.2d 547, 554 (E.D. Pa. 2008) (granting summary judgment to defendant where plaintiff produced scant evidence of duration of spill);  Cox, 2008 WL 4072804, at *8 (summary judgment for defendant where "there [was] no evidence tending to show whether the oil spill had been on the Wal-Mart floor for seconds, minutes, hours or days"); Read v. Sam's Club, N0. 05-0170, 2005 WL 2346112, at *2 (E.D. Pa. Sept. 23, 2005) (Davis, J.) (granting summary judgment for defendant where plaintiff failed to produce evidence as to origin of spill or how long spill was on floor prior to plaintiff's accident); Flocco v. Super Fresh Markets, Inc., No. 98-0902, 1998 WL 961971, at *2-3 (E.D. Pa. Dec. 29, 1998) (Waldman, J.) (granting summary judgment for defendant where plaintiff failed to produce evidence of time gravy was on floor, despite plaintiff's testimony that she did not hear breaking glass during half-hour they were shopping); Clark v. Fuchs, No. 93-1422, 1994 WL 13847, at *3 (E.D. Pa. Jan. 14, 1994) (Buckwalter, J.) (granting summary judgment for defendant where plaintiff failed to

present evidence to indicate how long paper she slipped on had been on floor); Gales v. United States, 617 F.Supp. 42, 44 (W.D. Pa. 1985) (granting summary judgment for defendant where plaintiff had not established constructive notice despite evidence that employee moved through area two hours prior and observed no puddle on floor); Swift, 690 A.2d at 723 (granting summary judgment for defendant where plaintiffs did not present evidence as to how water got on floor or how long condition existed); Moultrey v. Great A & P Tea Co., 422 A.2d 593, 596-97 (Pa. Super. 1980) (affirming grant of compulsory non-suit to defendant where plaintiff failed to present any evidence of how long cherry on which plaintiff slipped had been on floor, how it got there, and when area in which plaintiff fell had last been cleaned); Martino, 213 A.2d at 610 (affirming dismissal of negligence suit where plaintiff slipped on grape in grocery store, finding plaintiff failed to produce any evidence of actual or constructive notice); Dimino v. Wal-Mart Stores, Inc., 83 Pa. D. & C.4th 169, 177-78 (Monroe C.C.P. 2007) (granting summary judgment to defendant where a fact-finder would have to guess as to duration a grease spot was on the floor).

  Here, Plaintiff argues that three bases exist to find that the grapes were on the floor for a sufficient duration to warrant a finding of constructive notice – namely, that the grapes were smashed, they were brown and looked rotten, and they looked as if someone had walked through them before Plaintiff slipped. See Doc. 25 at 6-8. In support of her contention that this testimony adequately raises the issue of constructive notice, Plaintiff relies on Rumsey v. Great A & P Tea Co., 408 F.2d 89 (3d Cir. 1969), wherein the Third Circuit reversed the grant of defendant's summary judgment motion because plaintiff

had produced sufficient evidence that the supermarket owner had constructive notice of wilted lettuce on the floor to warrant submitting the matter to a jury. Id. at 12-13.

In Rumsey, the Third Circuit noted that "[s]mall differences in the evidence can lead to opposite conclusions as to whether the condition of the foreign substance, alone or with other circumstances, was sufficient to support a rational inference that it had been there long enough for a reasonably careful proprietor to have discovered and removed it." 408 F.2d at 90. The plaintiff in Rumsey testified that the lettuce had been on the floor for "some time," that it was "old," not "fresh," "wilted," "brown" or "yellow," and that it "was segmented into small irregular pieces." Id. The Third Circuit concluded that the wilting and discoloration could lead a reasonable person to infer that it had been on the floor for hours, and that "[t]he passage of time is also suggested by the fragmentation into segments not more than an inch or two in length, for it is very unlikely that one would tear or break a lettuce leaf into such small pieces before dropping it." Id. at 90-91. The Third Circuit has cited to Rumsey for the principle that "[c]ircumstantial evidence that food was left on the floor for an inordinate period of time can be enough to constitute negligence." David, 740 F.2d at 236 (constructive notice shown through witness statement that she had seen the same spill on the floor "about an hour and a half ago").

Plaintiff's reliance on her testimony, and on Rumsey, is misplaced. Here, there is no direct evidence of the duration of the hazard. Viewing Plaintiff's testimony in the light most favorable to her, it provides scant evidence as to the duration of time that the grapes were on the floor. Neither the location of the incident nor the condition of the

12

grapes suggests anything about how long they were there.  Thus, accepting her testimony in full, the grapes could have been dropped two hours or two minutes earlier, they could have been dropped by a customer or by an employee, they could have fallen out of a shopping bag or a shopping cart, and they could have been damaged by having been dropped, stepped on or struck by the wheels of a shopping cart.  The answers to all of these questions are completely unknown, even if Plaintiff's testimony is fully credited.  For example, although Plaintiff stated that the grapes looked like they had been slipped on previously, she stated that there were "approximately eight to ten grapes," see Plaintiff Dep. at 19, suggesting they had not been on the floor long enough to be completely obliterated or crushed to pulp.  Although Plaintiff described the grapes alternatively as "red" and "brown," she nevertheless ruled out them being green or purple grapes, see Plaintiff Dep. at 19-20, which also suggests the grapes had not been on the floor long enough to rot or to be crushed or otherwise made unrecognizable as to color variety.   Although undoubtedly unpalatable, "smashed" and "rotten" in appearance, see Plaintiff Dep. at 21, the grapes could have been made to look that way as a result of Plaintiff's slip alone or by a single previous customer, whether an hour earlier or seconds earlier.  In addition, there is no evidence suggesting the presence of a debris trail, such as grape fragments or juice on the floor beyond the area where the grapes were located, which further suggests that the grapes had not been smashed onto the bottom of other customers' shoes or shopping carts and taken to other locations.

    In fact, the only guidance as to the duration the grapes may have been on the floor is the Sweep Log evidencing an employee floor sweep at approximately 4:30 p.m., about

13

two hours and twenty minutes before Plaintiff's fall.  See Sweep Log at Doc. 24-2 Exh. McConway-4.  The Sweep Log creates a window of approximately two hours and twenty minutes during which the grapes went to the floor, and it is not possible for the jury to make a determination within that time frame based on Plaintiff's testimony or any other record evidence.  Even if I were to ignore the Sweep Logs, the other evidence is of no assistance in determining how long the grapes were on the floor.  Moreover, Plaintiff provides no evidence showing that grapes or other produce regularly falls to the floor at the location of her slip.  See Corrado v. Super Fresh Food Market, Inc., 2010 WL 3794961, at *2-3 (3d Cir. 2010) (affirming summary judgment for defendant where plaintiffs failed to submit sufficient evidence of actual or constructive notice such as whether passage of customers through area regularly caused fruit to fall to floor).  Thus, this case is distinguishable from Rumsey.[7]

In sum, a factfinder presented with Plaintiff's testimony would be left to guess as to how long the grapes may have been on the floor, guess as to how they got there, guess as to whether they were slipped on by anyone other than Plaintiff and, if so, guess as to how many people may have stepped on them before Plaintiff walked into the store.

---

[7] This case is also distinguishable from another "wilted lettuce" case.  In Kania v. Sbarro, Inc., Civ. No. 97-6863, 1998 WL 800320 (E.D. Pa. Nov. 13, 1998) (Waldman, J.), plaintiff slipped on a piece of lettuce near a luncheon food buffet, and noticed that the lettuce was brown.  The restaurant's manager testified that his duties included checking the buffet area every five to ten minutes to inspect the floor for spills or debris but that the restaurant was shorthanded that day, and plaintiff testified that she did not see any employees near the buffet for the five to ten minutes before she slipped.  Taken together, with the report of an expert witness that the floor surface was slippery without matting, this evidence was sufficient to overcome summary judgment.  In contrast, here there is no evidence that the area required frequent checking, and plaintiff relies on the sole fact that the grapes appeared smashed and rotten.

Stated differently, whether Defendant had constructive notice in this case cannot be determined by the factfinder based on a determination of Plaintiff's credibility.  Rather, assuming Plaintiff's testimony would be fully credited, it leaves the issue of how long the grapes were on the floor in the realm of pure conjecture, leaving a jury to speculate or guess on the question of constructive notice.  This the law does not allow.  See, e.g., Henderson, 2009 WL 426180, at *5; Cox, 2008 WL 4072804, at *8; Read, 2005 WL 2346112, at *2; Flocco, 1998 WL 961971, at *3.  Accordingly, I conclude that Defendant Moran is entitled to summary judgment.

## IV.  CONCLUSION

The threshold requirement for establishing a breach of duty in the context of a premises liability action is the business owner's notice of the hazardous condition, in this case whether Defendant Moran had constructive notice of the hazard posed by grapes on a supermarket floor.  Viewing the record evidence in the light most favorable to Plaintiff, the question of how long the grapes were on the floor before Plaintiff slipped on them is a matter of pure conjecture.  The most that can be inferred is that someone dropped the grapes at some point in time after the last sweep two hours and twenty minutes prior, which is insufficient to sustain Plaintiff's burden to prove notice.  Therefore, I will grant judgment for Defendants as a matter of law.  An appropriate order follows.